[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff initiated this action in the Small Claims section of the Superior Court. Subsequently, on motion of the defendant, this Small Claims action was transferred to the regular New Britain Superior Court docket.
The plaintiff, Nancy H. Szamier (hereinafter plaintiff), presses her claim for damages against the defendant, Daniel P. Tiso, in this court.
The factual situation underlying her claim is as follows. On August 28, 2001 the plaintiff driving her 1998 Chevrolet automobile in the parking lot of the Big Y supermarket was struck on the driver's side rear by the defendant, Tiso, as he was backing out of a parking space.
The defendant admits striking the plaintiff's car on the driver's rear side. However, he questions the extent of the damages resulting as well as plaintiff's failure to mitigate the damages.
The specific issues raised by the defendant relates to the repair charges by the repair shop, Jim's Auto Body, because its hourly rate was at a greater rate than was usual and customary. The plaintiff responds that the defendant used an hourly rate of $40 per hour that it arrived at by selectively reviewing rates of repair shops with which the Liberty Mutual Insurance Co., the defendant's insurer, had business relations, or which did work for other auto casualty insurance companies. That these selected shops did not represent the usual and customary hourly rates for auto repair shops in the geographical area where the plaintiff resided.
Additionally, the plaintiff contends that she incurred additional expenses for car rental and storage charges while her car remained at Jim's Auto Body shop because of the refusal of Liberty Mutual to pay the repair charges invoiced to her by Jim's Auto body.
The court finds that the plaintiff could reasonably assume that Jim's CT Page 2578-ff Auto Body and Liberty Mutual had reached an agreement as to repair work to be done and the cost of that work since she had given written authorization to Jim's Auto Body to negotiate in her behalf, the repairs and the payment for these repairs with Liberty Mutual. She was, however, committed to Jim's Auto Body, to be responsible for the full repair costs after credit for any payments received from Liberty Mutual by Jim's Auto Body.
Thus, the issues herein concern the repairs needed to put the plaintiff's auto in the condition it was in prior to being damaged when the defendant backed into it. The actual repairs that were required are not seriously at issue; except, the replacement of the left rear window that showed no sign of damage immediately after the accident. Jim's Auto Body in making the body repairs temporarily removed the window. In so doing, Jim's Auto Body broke the window, or discovered that it was broken. It was listed as a cost of the repairs and billed to the plaintiff. The defendant contends that the plaintiff has failed to prove that the defendant caused the window to be broken. The court agrees.
Jim's Auto Body contends that the differences in the pricing of the repairs between it and Liberty Mutual's appraisers results from the use by the appraisers of a computer software program that fails to include many ancillary items that are necessary to adequately complete the repairs. See Defendant's Exhibit O, Notice of Deficiency in Insurance Estimate.
The defendant also implies that because the owner of Jim's Auto Body was related to the plaintiff through marriage that he overcharged her, knowing that the insurance carrier would be responsible for the payment for the repairs. The court finds no basis for this argument.
The court finds that the plaintiff was entitled to have her automobile repaired to its pre-accident condition. That her agreement with Jim's Auto Body provided such repairs. That she offered to have the repairs done by a repair shop suggested by the defendant through his insurance carrier, Liberty Mutual Insurance Co., subject to the carrier assuming the responsibility for the quality of the repairs. She received no response to this offer. That after Jim's Auto Body completed the repairs, Liberty Mutual made payment based only on its in-house appraisal reports. It also arbitrarily terminated providing a substitute auto for transportation to the plaintiff knowing that Jim's Auto Body had not released to the plaintiff her repaired car, causing her to personally incur auto rental costs. That Jim's Auto Rental charged the plaintiff with storage charges for eleven days when she failed to remove her car from their premises after completion of the repairs, but before Jim's CT Page 2578-fg Auto Body received payment for its work or a commitment for payment of the amount due after credit for the payments made by Liberty Mutual. The court finds storage at $25 per day amounting to $275.00 to be reasonable.
The court also finds that the plaintiff incurred costs that were fair and reasonable in the sum of $6,985.23 to Jim's Auto Body for repair of her auto caused by the collision with the defendant's auto. The court finds that the charge by Jim's Auto Body for a rear window amounting to $42.94, plus tax of $2.58 totaling $45.52, was not proven to be caused by the collision.
Further, the court finds that the plaintiff was entitled to the use of a substitute automobile until December 22, 2001, the day that Jim's Auto Body released the repaired auto to her. That a reasonable sum for this use is $26.95 per day for the twenty-two days amounting to $592.90.
That the storage charges of $275.00 charged to the plaintiff by Jim's Auto Body were reasonable. These costs and charges incurred by the plaintiff were directly related to the collision caused by the defendant and totals as follows:
$7,030.75 Repairs by Jim's Auto Body
275.00 Plus auto storage
592.90 Plus auto rental
45.52 Less non-related window glass
(4,141.84) Less payments made by Liberty Mutual
$3,711.29 Balance due and owing to plaintiff
Therefore, Judgment may enter for the plaintiff in the sum of $3,711.29, together with court costs.
BY THE COURT
Kremski, J.T.R. CT Page 2578-fh